**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALCATEL-LUCENT USA INC., et al., <br><br> Defendants. | Civil Action No.: 15-cv-8143 <br><br> **OPINION AND ORDER** |

**CECCHI, District Judge.**

I.  **INTRODUCTION**

This matter comes before the Court on the Order to Show Cause filed by Plaintiffs Communications Workers of America ("CWA"), Brian P. Reilly, Thomas Galvin, and Greg Gehrke (collectively, "Plaintiffs"), requesting that this Court enter a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65 against Defendants Alcatel-Lucent USA Inc. ("Alcatel"), Phillipe Camus, Michel Combes, Jean C. Monty, and Susan Lear (collectively, "Defendants"). ECF No. 2. Defendants Alcatel and Susan Lear opposed the motion. ECF No. 9. The Court held a telephone conference on this matter on November 23, 2015. The parties filed supplemental submissions on November 24, 2015. ECF Nos. 11, 12. After full consideration of the parties' submissions and the positions presented during the November 23, 2015 conference, Plaintiffs' motion for a temporary restraining order is denied.

II. **BACKGROUND**

CWA is the collective bargaining representative for various bargaining units of employees of Alcatel. Complaint ("Compl."), ECF No. 1 ¶ 5. Alcatel maintains three defined pension benefit

plans: (1) the Lucent Technologies Pension Plan ("LTPP"), which provides retirement benefits to <u>former</u> occupational employees who were covered by collective bargaining agreements between Alcatel and various labor organizations, including CWA; (2) the Alcatel Lucent Retirement Income Plan ("ALRIP"), which provides retirement benefits to active and retired management employees and deferred vested former employees; and (3) the Lucent Technologies, Inc. Retirement Plan ("LTRP"), which provides retirement benefits to <u>present</u> occupational employees who are covered by collective bargaining agreements between Alcatel and various labor organizations, including CWA.[1] Id. ¶¶ 15-16. Since its inception, Alcatel has been obligated by various labor agreements to maintain a retiree health plan and pay, at least in part, for the post-retirement health benefits of formerly represented occupational employees. Id. ¶ 18.

On September 14, 2015, Alcatel notified CWA of two separate transfers of participants, liabilities, and assets from the overfunded LTPP to the two other underfunded plans, the ALRIP and the LTRP, effective December 1, 2015 (the "transfers"). Defendants Alcatel-Lucent USA Inc., and Susan Lear's Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction ("Def. Br."), ECF No. 9 at 1. Plaintiffs claim by making the transfers Alcatel would (1) violate the fiduciary provisions of ERISA Sections 403(c)(1) and 404(a), 29 U.S.C. §§ 1103(c)(1), 1104(a), and (2) breach two of its labor agreements—the 2004 National Memorandum of Understanding (the "NMOU"), which requires Alcatel to provide certain benefits to former occupational employees through 2019, and the collective bargaining agreement between Alcatel and CWA covering Alcatel installer employees through 2018 (the "CBA"), which precludes Alcatel from taking any action with respect to any

---

[1] Plaintiffs Brian P. Reilly, Thomas Gavin, and Greg Gehrke are participants in the LTPP plan and their employment rights are governed by collective bargaining agreements between Alcatel and CWA. Compl. ¶¶ 6-8.

2

"existing Employee Benefit" that "would reduce or diminish the benefits or privileges provided thereunder without the Union's consent"—in violation of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Compl. ¶¶ 32-40.

Defendants argue in response that the retirees' pension benefits or eligibility would not be impacted in any way by the transfer. Def. Br. at 1. Defendants contend this transfer would be the fourth such similar transfer since 2010. Id. Each transfer has been taken with CWA's awareness and without issue, with the exception of a single, filed but abandoned grievance in 2011. Id. The previous transfers all occurred and had been announced to occur on December 1st of the same year because that was the administratively required date on which to assure the plans and retirees that retirees would participate in only one plan each year. Id. Defendants further argue the CWA does not represent retirees, i.e., those in the LTPP. Id. In addition, Defendants assert Alcatel has discretion whether it shall fund its annual retiree healthcare obligation from Company contributions or from excess pension assets. Id. The plans are described as part of the same overall trust, so that practically speaking, the transfers do not move assets out of the trust. Id. Finally, Defendants submitted an independent actuarial analysis which shows that, through 2019, the likelihood an adequate surplus will be available in the LTPP to meet the Company's funding obligations is 100 percent. Id.; see also Declaration of Stephen J. Muscat, ECF No. 9 ¶ 15, Ex. 8. Thus, Defendants state there would be no harm occasioned by the transfer and no standing by the CWA. Def. Br. at 1-2.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits District Courts to grant temporary restraining orders. Fed. R. Civ. P. 65(b). Granting injunctive relief is "an extraordinary remedy . . . which should be granted only in limited circumstances." AT&T v. Winback & Conserve Program, Inc.,

42 F.3d 1421, 1426-27 (3d Cir. 1994) (internal quotation and citation omitted). For a court to grant injunctive relief, a party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). The party seeking injunctive relief bears the burden of showing that all four factors weigh in favor of preliminary relief. AT&T, 42 F.3d at 1427. Further, the U.S. Supreme Court has stated that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88 (1974) (quoting Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)); see also 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (3d ed.) ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.").

## IV. DISCUSSION

### A. Irreparable Harm

Plaintiffs argue they will be harmed if the status quo is not preserved because "[i]f the threatened transfers proceed they cannot, as a matter of law, effectively be reversed." Memorandum of Law in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, ("Pl. Br."), ECF No. 2 at 4. Plaintiffs contend if a temporary restraining order is denied and later Plaintiffs are successful on their claims, Internal Revenue Code ("IRC") Section 414(1)(2) will make it impossible to reverse the planned transfers without losing a certain tax-exempt status under the IRC. Plaintiffs have failed to meet their burden of showing immediate irreparable harm for several reasons.

First, Plaintiffs have failed to show the threatened injury cannot be remedied at law.

4

Plaintiffs' claim rests on the potential loss of one funding source—the excess assets in the LTPP—for a retiree medical benefit. A lack of funding, however, is an economic loss and "[e]conomic loss does not constitute irreparable harm." Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994); Kos Pharms., 369 F.3d at 728 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough [to constitute irreparable harm]." (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974))).

Even if economic loss could constitute irreparable harm, Plaintiffs have not shown Alcatel will be unable to fulfill its funding obligations if excess assets are unavailable. As Plaintiffs concede in their papers, if the funding for the LTPP were to fall below 120 percent, making funding through excess assets unavailable, Alcatel must meet its funding obligation by other means, such as out of its general revenue. Compl. ¶ 24; Pl. Br. at 6. Plaintiffs offer no evidence Alcatel will be unable to meet its obligations out of its general revenue in the event excess assets become unavailable during the term of the NMOU.

Further, there is no reason to suppose the Court could not order the return of monies from the transferee plans to the LTPP at the conclusion of a full trial. Plaintiffs do not appear to point to relevant case law on this issue. Even assuming a court ordered return of monies would carry with it a negative tax implication, Plaintiffs have failed to articulate why this cannot be remedied by money damages. Moreover, any potential impact on the LTPP plan participants is speculative. Plaintiffs have not met their burden of showing the Court would lack the ability to remedy an inappropriate transfer.

Second, Plaintiffs have failed to meet their burden of showing they will be harmed by the transfers. Plaintiffs allege they seek to protect the availability of the excess assets in the LTPP to fund Alcatel's LTPP retiree medical benefit subsidy, which the NMOU commits Alcatel to make

through 2019. Alcatel, however, has submitted an independent actuarial analysis which shows that, through 2019, the likelihood that an adequate surplus will be available in the LTPP to meet the NMOU commitment is 100 percent. Def. Br. at 10-11. Thus, Alcatel argues there will be absolutely no change or reduction in any of the LTPP plan participants' retirement benefits. Id. at 11.

Third, Plaintiffs' delay in bringing this action undercuts their claim of irreparable harm and the alleged need for emergent relief. Alcatel informed CWA of the transfers on September 14, 2015. CWA, however, did not commence this action until November 18, 2015—over two months after learning of the planned transfers and less than two weeks before the planned transfers were set to occur. See Majorica, S.A. v. R.H. Macy & Co., 762 F.2d 7, 7 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice." (citing Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985))). For all of these reasons, Plaintiffs have failed to satisfy their burden as to irreparable harm.[2]

### B. Likelihood of Success on the Merits

As to Plaintiffs' likelihood of success on the merits, "[i]t is a cardinal principle of equity jurisprudence that [injunctive relief] shall not issue in a doubtful case." Erie Lackawanna Ry. V. Lighter Captains Union, 338 F. Supp. 955, 971 (D.N.J. 1972). Plaintiffs' contentions in this application do not contain sufficient support necessary to allow for the granting of temporary injunctive relief. At this stage in the proceedings, Plaintiffs have not demonstrated their entitlement to relief on the following points, which contain disputed issues more properly

---

[2] On or about January 1, 2016, Alcatel will be merged into Nokia. Compl. ¶ 31. Plaintiffs also argue that the Nokia merger will somehow prevent the planned transfers from being undone. Plaintiffs, however, offer neither facts nor law to support these assertions.

addressed through further development of the record.

First, Defendants argue the CWA lacks standing to assert its Section 301 claim because the CWA does not represent the transferred individuals. The transferred individuals are retired employees or their surviving spouses. The Supreme Court has held that in interpreting collective bargaining agreements, the "ordinary meaning of 'employee' does not include retired workers." Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 168 (1971). Accordingly, Plaintiffs have not met their burden at this point of showing the CWA has standing to assert Section 301 claims.

Second, Defendants assert the NMOU gives it discretion whether to fund its annual retiree healthcare obligation from Alcatel contributions or LTPP excess assets. Def. Br. at 17-18. The NMOU states: "The Company shall determine, in its sole discretion, for each year whether it shall fund [its annual retiree healthcare obligation] from Company contributions or from excess pension assets." Accordingly, given the discretionary authority of the NMOU, Plaintiffs have not demonstrated at this point that Alcatel cannot transfer surplus monies to other plans or meet its obligations to the LTPP through Company contributions.

Third, Defendants argue that ERISA's fiduciary duty provisions are not at issue. In Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999), the Supreme Court stated, "[i]n general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets." Id. at 444. Defendants argue the decision to make the planned transfers from the LTPP to the other plans accomplishes a "spinoff" from the LTPP, which is a decision by the employer concerning the composition or design of the plan itself. Plaintiffs' submissions thus far have not persuaded the Court that the decision to make these transfers

7

implicates the Defendants' fiduciary duties.

Moreover, in Hughes Aircraft, the Court made clear that in a defined benefit plan, members have no entitlement to share in a plan's surplus. Id. at 440-41. This is because "[t]he structure of a defined benefit plan reflect[s] the risk borne by the employer" and "[g]iven the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool." Here, the LTPP appears to be a defined benefit plan with no member entitled to a particular asset. Def. Br. at 20, Compl. ¶¶ 15-21.

Finally, Defendants argue the individual Plaintiffs lack constitutional standing to prosecute ERISA claims because they cannot establish an actual injury arising out of any alleged fiduciary breach. Given the LTPP will maintain a surplus of assets over liabilities, no participant can establish an actual injury arising out of any alleged fiduciary breach that confers constitutional standing. Perelman v. Perleman, 793 F.3d 368, 373-75 (3d Cir. 2015) (when a defined benefit plan has a surplus of assets over liabilities, no participant can establish an actual injury arising out of any alleged fiduciary breach that confers constitutional standing). Thus, Plaintiffs have not satisfied their burden at this point of showing they have constitutional standing to bring these claims.

### C. Balance of Hardships

Plaintiffs argue the balance of hardships tilts in their favor because Defendants will not be injured by preserving the status quo. Plaintiffs, however, acknowledge a funding deficit to the LTRP. Def. Br. at 21. If the transfer at issue is postponed, Defendants may face significant hardship. Defendants contend "[Alcatel] may face the need to make significant, nonrefundable contributions to that plan if the redesign is halted. Further, the financial status of that plan will trigger higher premiums . . . which are charged directly to the plan itself, not to [Alcatel]." Id. at

21. Thus, Plaintiff has not carried its burden of showing that the balance of hardships tilts in its favor.

### D. Public Interest

The public interest in this matter is served by the orderly functioning of the plans at issue. To the extent that this Court interferes with the proposed transfers, the public interest would not be served.

### V. CONCLUSION

For the reasons above, the Court denied the Plaintiffs' request for a temporary restraining order.

Accordingly,

**IT IS** on this 25th day of November, 2015,

**ORDERED THAT:**

1. Plaintiffs' request for a temporary restraining order (ECF No. 2) is DENIED.

**SO ORDERED.**

_____
**CLAIRE C. CECCHI, U.S.D.J.**