**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, et al., | Civil Action No.: 15-cv-8143 |
| Plaintiffs, | **OPINION** |
| v. | |
| ALCATEL-LUCENT USA INC., et al., | |
| Defendants. | |

**CECCHI, District Judge.**

### I.   INTRODUCTION

This matter comes before the Court on the motion of Defendants Alcatel-Lucent USA Inc. ("Alcatel"), Susan Lear, Phillipe Camus, Michel Combes, and Jean C. Monty (collectively, "Defendants") to dismiss the First Amended Complaint [ECF No. 15] of Plaintiffs Communications Workers of America ("CWA"), International Brotherhood of Electrical Workers ("IBEW"), Brian P. Reilly, Thomas Galvin, Greg Gehrke, and Roland J. Brofford (collectively, "Plaintiffs"). [ECF No. 18.] The Court has considered the submissions made in support of and in opposition to the instant motion. The Court has also considered the arguments made on the record during oral argument held on April 18, 2016. For the reasons set forth below, Defendants' motion is GRANTED.

### II.   BACKGROUND

CWA and IBEW (the "Union Plaintiffs") are the collective bargaining representatives for various bargaining units of employees of Alcatel. First Amended Complaint ("Compl."), ECF No. 15 ¶¶ 5-6. Plaintiffs Brian P. Reilly, Thomas Galvin, Greg Gehrke, and Roland J. Brofford (the

"Individual Plaintiffs") are former members of either CWA or IBEW who retired from active employment and have been receiving pension benefits from one of Alcatel's pension benefit plans since their retirement. Id. ¶¶ 7-10.

Defendant Alcatel, and its predecessor company Lucent Technologies, Inc. ("Lucent"), employs, and has for many years employed, persons represented by and subject to collective bargaining agreements with CWA and IBEW. Id. ¶ 11. According to Plaintiffs, Defendant Susan Lear is the Director of Pension Plan Operations for Alcatel and, together with Alcatel, exercises control over the management and administration of Alcatel's pension benefit plans. Id. ¶¶ 11, 16. Defendants Philippe Camus, Michel Combes, and Jean C. Monty (the "Individual Defendants") are allegedly members of Alcatel's Board of Directors. Id. ¶¶ 13-15. Defendant Combes also allegedly serves as Alcatel's Chief Executive Officer.[1] Id. ¶ 14.

Alcatel maintains three defined pension benefit plans: (1) the Alcatel Lucent Retirement Income Plan ("ALRIP"), which provides retirement benefits to active and retired management employees and deferred vested former employees; (2) the Lucent Technologies Pension Plan ("LTPP"), which provides retirement benefits to former occupational employees who were covered by collective bargaining agreements between Alcatel and various labor organizations, including CWA and IBEW; and (3) the Lucent Technologies, Inc. Retirement Plan ("LTRP"), which provides retirement benefits to present occupational employees who are covered by collective bargaining agreements between Alcatel and various labor organizations, including CWA and IBEW. Id. ¶¶ 17-18. LTRP participants who retire are transferred immediately to the LTPP. Id. ¶ 19. Since its inception, Alcatel has been obligated by various labor agreements to maintain

---

[1] Defendants contest this, claiming Camus, Combes, and Monty are not on Alcatel's board but rather are or were executives for Alcatel's French parent company, Alcatel Lucent, S.A. [Defs.' Br. at 19, 21.]

a retiree health plan and pay, at least in part, for the post-retirement health benefits of formerly represented occupational employees. Id. ¶ 20.[2]

On September 14, 2015, Alcatel notified CWA and IBEW of two separate transfers of participants and assets, including approximately $1.2 billion in excess assets[3] from the LTPP to the two other plans, the ALRIP and the LTRP, effective December 1, 2015 (the "transfers"). Id. ¶ 29. Plaintiffs claim that, by making the transfers, Alcatel (1) violated the exclusive benefit rule and fiduciary provisions of Sections 403(c)(1) and 404(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1103(c)(1), 1104(a) (the "ERISA Claim"); and (2) breached two of its labor agreements—the 2004 National Memorandum of Understanding (the "MOU"), which requires Alcatel to provide certain benefits to former occupational employees through 2019, and the collective bargaining agreement between Alcatel and CWA covering Alcatel installer employees through 2018 (the "CBA"), which precludes Alcatel from taking any action with respect to any "existing Employee Benefit" that "would reduce or diminish the benefits or privileges provided thereunder without the Union's consent"—in violation of Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 (the "LMRA Claim"). Id. ¶¶ 24-28, 34-42.

On January 4, 2016, Defendants filed this motion to dismiss the Individual Plaintiffs' ERISA claim for lack of Article III standing pursuant to Fed. R. Civ. P. 12(b)(1), and to dismiss both the LMRA claim and the ERISA claim for lack of statutory standing and/or failure to state a

---

[2] The Individual Plaintiffs in this action are former occupational employees of Alcatel and have been receiving pension benefits from the LTPP or LTRP since their retirement. Id. ¶¶ 7-10.

[3] "Excess assets" refers to assets greater than would be necessary to pay the benefit obligations owed to all plan participants. Id. ¶ 29.

claim pursuant to Fed. R. Civ. P. 12(b)(6).  [ECF No. 18.]  Plaintiffs opposed the motion on

February 2, 2016.  [ECF No. 21.]  Defendants submitted a reply on February 26, 2016.  [ECF No.

28.]  Plaintiffs submitted a sur-reply on March 14, 2016.  [ECF No. 30.]  Defendants submitted a

sur-sur-reply on March 28, 2016.  [ECF No. 31.]  The Court held oral argument on April 18, 2016.

After oral argument, both parties filed supplemental submissions.  [ECF Nos. 33, 34.]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of

Civil Procedure 12(b)(1), because standing is a matter of jurisdiction.  Ballentine v. United

States, 486 F.3d 806, 810 (3d Cir. 2007).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies.'"  Lance v. Coffman, 549 U.S. 437, 439 (2007).  One key aspect of this case-or-

controversy requirement is standing.  Id. at 439.  "The standing inquiry focuses on whether the

party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."

Constitution Party of Pa. v. Aichele, 757 F.3d 347, 360 (3d Cir. 2014) (citing Davis v. FEC, 554

U.S. 724, 734 (2008)).

To establish standing, a plaintiff must satisfy a three-part test, showing: (1) an 'injury in

fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the

plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3)

redressability of the injury by a favorable decision by the Court.  Nat'l Collegiate Athletic Ass'n

v. Gov. of N.J., 730 F.3d 208, 218 (3d Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S.

488, 493 (2009)).  "The party invoking federal jurisdiction bears the burden of establishing these

elements."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Although a plaintiff bears

4

the burden of establishing the elements of standing, at the motion to dismiss stage, the Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party."[4] Ballentine, 486 F.3d at 810.

**B.      Rule 12(b)(6)**

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the

---

[4] Defendants purport to bring a factual, rather than facial challenge to jurisdiction. [Defs.' Br. at 2]. However, the essence of their Rule 12(b)(1) motion is that the Individual Plaintiffs have not pleaded a concrete or particularized injury. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) ("The Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the Amended Complaints lack sufficient factual allegations to establish standing."). Therefore, the Court treats this motion as a facial challenge.

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" See <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

The Court may also consider "a document integral to or explicitly relied upon in the complaint . . . without converting the motion to dismiss into one for summary judgment." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997). Here, the First Amended Complaint relies on the MOU, the CBA, and the plan document governing the LTPP. Accordingly, the Court relies on these three documents in deciding the present motion.

## IV.   DISCUSSION

### A.   LMRA Claim

#### 1.   Applicable Law

Section 301 of the LMRA provides in pertinent part:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Plaintiffs argue the decision of Defendants to transfer participants and assets from the LTPP to the LTRP and the ALRIP constitutes a breach of two collective bargaining agreements: the MOU and the CBA. Plaintiffs allege the MOU requires that excess LTPP assets remain in that plan for the purpose of ensuring that post-retirement health benefits will be subsidized through Internal Revenue Code ("IRC") Sections 401(h) and 420 transfers.[5]  Compl. ¶ 35.  Notably, the

---

[5] IRC Sections 401(h) and 420 authorize pension plans with excess assets, i.e., a funding level in excess of 120 percent, to transfer those assets to a special plan account established for the purpose of providing retiree medical benefits.

First Amended Complaint cites no particular section of the MOU that creates this requirement.[6]

Plaintiffs also cite to Article 17, Section 3 in the CBA, which precludes Alcatel from taking any action with respect to any "existing Employee Benefit" that "would reduce or diminish the benefits or privileges provided thereunder without [CWA's] consent." Id. ¶ 28. Plaintiffs allege the transfers violate this provision because Alcatel's actions effectively diminish the "benefits and privileges" of represented employees.[7] Id. ¶ 36.

### 2. Enforceable Rights[8]

#### i. The MOU

Defendants argue the transfers violated none of Plaintiffs' enforceable rights under the MOU. The Court agrees.

Plaintiffs claim the MOU prohibits using excess assets in the LTPP for any purpose besides funding the LTPP's Section 401(h) account to subsidize retiree participants' medical and ancillary benefits. [Pls.' Opp. Br. at 21.] In support of this proposition, Plaintiffs' briefing cites Section 6.E of the MOU, titled "Company Healthcare Funding for 2007 and Later":

> [Lucent] agrees that it shall cause the accumulated postretirement

---

[6] Rather, Plaintiffs cite to the MOU only in their opposition to the present motion. [See, e.g., Pls.' Opp. Br. at 24-25].

[7] Additionally, Plaintiffs point to a recently adopted Amendment 3 to the LTPP by Alcatel, allegedly designed to effectuate the transfers, which makes surviving spouses of former members of CWA eligible for participation in the LTRP, and argue this change constitutes a material modification in a term and condition of employment that may not be made mid-contract without the consent of CWA and IBEW. Compl. ¶ 37. The First Amended Complaint does not specify what provision of what agreement this violates or how this constitutes a material modification, and none of Plaintiffs' opposition briefing or oral argument addresses this aspect of the LMRA Claim. Accordingly, Plaintiffs have not stated a claim regarding the adoption of Amendment 3.

[8] Defendants also claim the Individual plaintiffs lack statutory standing to bring the LMRA claim. Statutory standing is a question of merits, not jurisdiction. North Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 371 n.3 (3d Cir. 2015). Thus, the Court need not decide whether the Individual Plaintiffs have standing before reaching the ultimate merits of the LMRA Claim.

> benefit obligation for [Lucent]-provided postretirement medical and dental plans for Eligible Participants, as determined by [Lucent] in accordance with Financial Accounting Standard 106, to be funded commencing in 2007 by contributions to a section 401(h) account in the [LTTP] in accordance with [ERISA].  Such contributions shall be made either from transfers of pension assets in excess of 125% of plan liabilities (as determined under [ERISA]) or from [Lucent's] contributions, in either case as contemplated by [ERISA].  [Lucent] shall determine, in its sole discretion, for each year whether it shall fund such amount from [Lucent's] contributions or from excess pension assets.

[MOU, Declaration of Ralph V. Maly, Jr. ("Maly Decl."), Ex. A at 272 (emphasis added).]

Plaintiffs also cite to Section 6.B of the MOU. [Pls.' Opp. Br. at 24.]  This section provides

that Lucent's obligation under the MOU to fund healthcare benefits is contingent on successfully

lobbying to change IRC Section 420 to include a number of provisions, including:

> 1.    An employer may . . . fund in a section 401(h) account collectively bargained retiree healthcare benefits . . . by in its discretion either transferring to such account excess pension assets . . . or by making supplemental contributions from operating cash as may be required to fund those benefits even if otherwise limited by the full funding limitation.
>
> 2.    To take advantage of the provisions of the Act, an employer must make an enforceable commitment to fund or prefund retiree healthcare benefits, or set aside excess pension assets to fund or prefund retiree healthcare benefits, as described above, at a level of cost or subsidy negotiated with a union or unions.

[MOU at 269.]  Plaintiffs cite no other sections of the MOU in support of the LMRA claim.

Plaintiffs' briefing also cites the LTPP plan document as relevant to interpreting the MOU.

First, Section 6.1 of the plan document provides that:

> [T]he separate accounts established by this Article 6 are to be used to fund, reimburse, and pay for, respectively: (i) a portion of the postretirement health benefits for employees of [Lucent] who participate in the Plan and who currently or in the future qualify or may qualify for . . . postretirement health benefits under the medical and dental plans sponsored by [Lucent] for retired employees and their eligible Lawful Spouses and dependents . . . .

8

[Maly Decl. Ex. C at 120.]  Second, in their briefing, Plaintiffs cite the "no-reversion rule" in Section 4.11 of the LTPP plan document for the proposition that "excess LTPP plan assets are to be used solely for retiree health and ancillary benefit purposes." [Pls.' Opp. Br. at 27.]  Section 4.11 is not cited in the First Amended Complaint and is not among the sections of the LTPP plan document Plaintiffs submitted in support of their opposition, so the full text of this section is not before the Court. [See Maly Decl. Ex. C.]  According to Plaintiffs, however, Section 4.11 provides that "after all benefit obligations to participants and beneficiaries have been satisfied, '. . . any remaining balance in the [LTPP] shall be applied solely for pension purposes in an equitable manner consistent with the purposes of the Plan.'" [Pls.' Opp. Br. at 36-37.]

The Court must interpret collective-bargaining agreements establishing ERISA plans "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy."  M&G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933 (2015). Accordingly, "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."  Id. (quoting 11 R. Lord, Williston on Contracts § 30:6 at 108 (4th ed. 2012)).

Here, even when read together with the LTPP plan document, the sections of the MOU Plaintiffs have cited neither prohibit the transfers at issue nor create an ambiguity as to whether the transfers are prohibited, because they do not require Alcatel to use the excess pension assets exclusively to fund retiree health benefits through the plan's Section 401(h) account.  Rather, Section 6.E of the MOU obligates Alcatel to fund the Section 401(h) account using either excess pension assets or direct contributions, and grants Alcatel "sole discretion" to decide which of the two funding sources to use.  [MOU at 272.]  Additionally, the proposed amendments to IRC Section 420, set forth in Section 6.B of the MOU, support this reading because they, too,

9

contemplate the employer using "its discretion" to decide whether to fund the 401(h) account through excess pension assets or direct contribution. [MOU at 269.]

The sections of the LTPP plan document Plaintiffs cite do not change this reading. First, although Section 6.1 requires the Section 401(h) account to be used for health benefits, it does not require the account to be funded by excess pension assets. [Maly Decl. Ex. C at 120.] Second, Plaintiffs have not articulated how Section 4.11, the full text of which is not before the Court, changes the reading of any part of the MOU to prohibit the transfers. Plaintiffs do not appear to seek to enforce LTPP Section 4.11 itself as prohibiting the transfers.

In short, under the MOU, Alcatel must fund the 401(h) account in accordance with Section 6.E, but need not use excess pension assets to do so. For this reason, the MOU does not require using the excess pension assets to fund the 401(h) account, and thus Plaintiffs have not adequately pleaded that the transfers of these excess assets out of the LTPP breached the MOU.[9]

### ii.    Article 17 of the CBA

Defendants further argue nothing in Article 17 of the CBA prohibits the transfers. The Court agrees.

Paragraph 1 of Article 17 of the CBA between CWA and Alcatel lists the benefit plans to which Article 17 applies. Notably, the LTRP is listed, but the LTPP is not. Nevertheless, Plaintiffs argue Article 17 prevents Alcatel from "using excess LTPP assets for its own purposes." [Pls.' Opp. Br. at 28-29.] Plaintiffs cite the following language from paragraph 3 in support of this contention:

---

[9] Because the MOU is not ambiguous as to whether the transfers are prohibited, the Court need not consider Plaintiffs' extrinsic evidence of the parties' intent during the negotiation of the MOU. See Int'l Union, UAW v. Skinner Engine Co., 188 F.3d 130, 145 (3d Cir. 1999) ("Extrinsic evidence [] may not be used to create an ambiguity where none exists." (emphasis omitted)).

> In the event, during the life of this Agreement, [Alcatel] proposes to exercise any right provided in any of the existing Employee Benefit Plans or their successors, by taking action affecting the benefits or privileges of Employees represented by the Union, it will before doing so, notify the Union of its proposal and afford the Union a period of sixty (60) calendar days for bargaining on said proposal; provided, however, that <u>no change may be made in the Plan which would reduce or diminish the benefits or privileges provided thereunder as they apply to Employees represented by the Union without its consent.</u>

[Maly Decl. Ex. B ("Article 17") at 61 (emphasis added).]

Plaintiffs claim the transfers reduced or diminished the privileges of the LTRP participants because they diminished the funding in the LTPP available to pay for the health subsidies to which LTRP participants will be entitled after they retire and are transferred to the LTPP. Compl. ¶ 36. Plaintiffs argue the compound phrase "benefits and privileges" implies that "privileges" means something different than the "benefits" provided by the LTRP; thus, "privileges" means the health subsidies current LTRP participants can expect to receive when they become LTPP participants. [Pls.' Opp. Br. at 29-30.]

Plaintiffs' argument is unpersuasive. Under paragraph 3 of Article 17, the "benefits and privileges" that cannot be "reduce[d] or diminish[ed]" by a "change . . . in the Plan" are those that are "provided <u>thereunder</u>." [Article 17 at 61 (emphasis added).] Here, "the Plan" is the LTRP, because Article 17 does not cover the LTPP. Whatever "privileges" are, they must be provided under the LTRP, not the LTPP. Therefore, future benefits provided under the LTPP are not "privileges" under the LTRP protected by Article 17. Moreover, if the word "privileges" referred to health subsidies or other benefits under the LTPP merely because LTRP participants will someday become LTPP participants, it would effectively add the LTPP to the list of plans covered under Article 17. Had the parties intended to prevent Alcatel from reducing or diminishing benefits under the LTPP, they would have put the LTPP on the list explicitly.

Accordingly, the Court finds that Plaintiffs have not adequately pleaded that the transfers were prohibited under Article 17, and thus have failed to state a claim for breach of the CBA. Dismissal of the LMRA claim as to all Plaintiffs against all Defendants is warranted.

### B. ERISA Claim

#### 1. Applicable Law

Section 403(c)(1) of ERISA, known as the "exclusive benefit rule," provides that, except in a few narrowly limited circumstances, "the assets of a plan [which must be held in trust] shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Section 404(a), governing the role of an ERISA fiduciary, provides in pertinent part:

> (1) Subject to [certain enumerated exceptions], a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of providing benefits to participants and their beneficiaries . . . .
>
>                         ***
>
> (D) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a).

Plaintiffs claim the transfers in question violated the exclusive benefit rule in ERISA Section 403(c)(1) and the fiduciary duties in ERISA Section 404(a) because they benefit both Alcatel and persons who were never LTPP participants. Compl. ¶ 40.

#### 2. Individual Plaintiffs' Article III Standing

The Individual Plaintiffs lack constitutional standing to bring the ERISA claim because they have not suffered a concrete, particularized injury.

The LTPP is a defined benefit pension plan. Compl. ¶¶ 17-18. The Supreme Court has explained that, for defined benefit pension plans, because the employer has an obligation to make up any shortfall, "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool . . . . Since a decline in the value of a plan's assets does not alter accrued benefits, members similarly have no entitlement to share in a plan's surplus . . . ." Hughes Aircraft Co. v. Jacobsen, 525 U.S. 432, 440-41 (1999). In other words, a participant in a defined pension plan possesses only a right to obtain benefits at a stated level; no participant possesses any interest in the assets of the pension fund, only in the benefits promised at that level. For this reason, "diminution in [p]lan assets" alone does not constitute an injury particularized enough to confer Article III standing on an individual plan participant. Perelman v. Perelman, 793 F.3d 368, 374 (3d Cir. 2015). Instead, a participant must show "individualized harm," i.e., failure to receive distributions to which the participant is entitled, or an increased risk that the entire plan will default and deprive the participant of distributions in the future. Id. But the "increased risk of default" theory of harm fails as a matter of law when "a plan's assets exceed its liabilities under a statutorily accepted accounting method[.]" Id. at 375.

Here, Plaintiffs have not alleged that any medical benefits to which they are entitled have gone unpaid. Nor have they adequately alleged the transfers increased the risk of default on those medical benefits, because they have not alleged the LTPP has become underfunded as a result. Therefore, the Individual Plaintiffs have shown no individualized injury, and lack standing.[10]

---

[10] Plaintiffs are incorrect that violation of ERISA automatically constitutes an injury-in-fact for the purposes of Article III standing. See Spokeo v. Robins, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

Plaintiff's invocation of Section 4.11 of the LTPP does not change this result.  According to Plaintiffs, Section 4.11 provides that "after all benefit obligations to participants and beneficiaries have been satisfied, '. . . any remaining balance in the [LTPP] shall be applied solely for pension purposes in an equitable manner consistent with the purposes of the Plan.'" [Pls.' Opp. Br. at 36-37.]  Plaintiffs contend Section 4.11 creates a reversionary interest, that is, that LTPP participants are entitled to the remaining balance in the LTPP in the form of pension benefits beyond their defined pension benefits.  But the language Plaintiffs quote merely requires Alcatel to use any leftover assets "for pension purposes in an equitable manner" when the LTPP terminates, not necessarily to distribute it to any of the Individual Plaintiffs or other LTPP participants.  [Id.]  Thus, it is not clear that Section 4.11 gives any of the Individual Plaintiffs a particular reversionary interest in any of the LTPP's assets, the loss of which would cause any Individual Plaintiff to suffer a particularized injury, and Plaintiffs have not adequately pleaded or shown the Court any evidence to the contrary.[11]

_____

Plaintiffs also argue no injury-in-fact showing is necessary because they seek pure injunctive relief.  [Pls.' Sur-Reply Letter at 2.]  But the First Amended Complaint specifically requests "an order directing Alcatel to restore to the LTPP the liabilities and assets transferred from the LTPP on or about December 1, 2016 or, in the alternative, that Alcatel make the LTPP whole by contributing to that Plan an amount equal to the excess assets transferred out of it on or about December 1, 2015."  Compl. Prayer for Relief ¶ 3 (citing ERISA Sections 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2), (3)).  This is the type of "'make-whole' equitable relief" for which the Third Circuit requires a showing of injury-in-fact specific to Plaintiffs.  See Perelman, 793 F.3d at 371-72, 375 (without suffering injury-in-fact, plaintiff lacked standing to force repayment of the pension plan's losses allegedly attributable to defendants' breach of fiduciary duty).

[11] To the extent Plaintiffs' opposition briefing argues Section 4.11 grants the Individual Plaintiffs a reversionary interest in the LTPP's assets, the Court need not presume this allegation is true, because it was not pleaded in the Amended Complaint.  See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (internal quotations and alterations omitted)).

Accordingly, dismissal for lack of standing of the Individual Plaintiffs' ERISA claim against all Defendants is warranted.

### 3.    Union Plaintiffs' Statutory Standing[12]

Defendants contend the Union Plaintiffs lack statutory standing to bring the ERISA claim. The Court agrees.

ERISA provides a list of individuals and entities with statutory standing to bring civil actions. See 29 U.S.C. § 1132(a).  Labor unions are not explicitly included on the list. See id. Rather, the type of party with statutory standing to bring a civil action depends on the type of relief sought. See id.  Here, Plaintiffs allege statutory standing pursuant to Section 1132(a)(2) and (3). Compl. ¶ 42.  Section 1132(a)(2) and (3) both grant standing to plan participants, beneficiaries, and fiduciaries, and Section 1132(a)(2) grants standing to the Secretary of Labor.  29 U.S.C. § 1132(a)(2), (3).   The Third Circuit has held that labor unions are "neither participants nor beneficiaries." N.J. State AFL-CIO v. New Jersey, 747 F.2d 891, 892-93 (3d Cir. 1984).  Nor do the Union Plaintiffs argue they are fiduciaries, or allege facts suggesting they are.[13]

Instead, the Union Plaintiffs contend they have associational standing on behalf of the employees they represent. [Pls.' Opp. Br. at 17-19.]  However, even assuming labor unions can sue under ERISA on behalf of employees, associational standing requires the association's

---

[12] Although Defendants briefly "question[]" the Union Plaintiffs' Article III standing, the main contention of their motion with respect to the Union Plaintiffs is that they lack statutory standing. [Defs.' Br. at 17-18.]

[13] Under ERISA, with exceptions not relevant here, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21).

members to have Article III standing.  Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).  As discussed above, the Individual Plaintiffs do not have Article III standing, and the First Amended Complaint identifies no other individual with Article III standing whom the Union Plaintiffs purport to represent.  Therefore, the Union Plaintiffs lack associational standing under ERISA, and dismissal of their ERISA claim against all Defendants is warranted.

Because no Plaintiff has standing to bring the ERISA claim, the Court need not consider this claim on its merits.

## V.    CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED.  However, the Court grants Plaintiffs 30 days from the date of this Opinion to file a Second Amended Complaint to attempt to address the pleading deficiencies described herein.

An appropriate order accompanies this Opinion.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

Dated: November 30, 2016

16