NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| COMMUNICATIONS WORKERS OF AMERICA, et al., | Civil Action No.: 2:15-cv-08143 |
|---|---|
| Plaintiffs, | OPINION |
| v. | |
| ALCATEL-LUCENT USA, INC., et al., | |
| Defendants. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendants Alcatel-Lucent USA, Inc. ("Alcatel"), John G. Hickey, Julie Liptak, and Susan Lear (the "Individual Defendants,"[1] and collectively with Alcatel, "Defendants") to dismiss the second amended complaint of Plaintiffs Communications Workers of America ("CWA"), International Brotherhood of Electrical Workers ("IBEW," and collectively with CWA, the "Union Plaintiffs"), Brian P. Reilly, Thomas Galvin, Greg Gehrke, and Roland J. Brofford's (the "Individual Plaintiffs," and collectively with the Union Plaintiffs, "Plaintiffs"). (ECF No. 39). On May 10, 2018, the Court held oral argument. (ECF No. 56 ("Tr.")). For the reasons set forth below, Defendants' motion to dismiss is granted.

## II. BACKGROUND

"Alcatel manufactures, installs, and maintains telecommunications and networking equipment throughout the world." (ECF No. 37 ¶ 11). CWA and IBEW are labor organizations, which for many years, acted as the "collective bargaining representative[s] for various bargaining units of employees of . . . Alcatel . . . and its predecessors." (*Id.* ¶¶ 5-6). The Individual Plaintiffs

---

[1] John G. Hickey is Alcatel's Vice President of Benefits, Julie Liptak is Alcatel's Vice President of Human Resources, and Susan Lear is Alcatel's Director of Pension Plan Operations. (ECF No. 37 ¶¶ 13-15).

are all former Alcatel occupational employees, whose employment rights were governed by one or more collective bargaining agreements between the Union Plaintiffs and Alcatel. (*Id.* ¶¶ 7-10). The Individual Plaintiffs are all participants of defined benefit plans offered by Alcatel to its employees. (*Id.*).

According to Plaintiffs, Alcatel "maintains three defined benefit pension plans." (*Id.* ¶ 16). The first, the Alcatel Lucent Retirement Income Plan (the "ALRIP") "provides retirement and related benefits to active and retired management employees as well as to deferred vested former employees[.]" (*Id.*). Plaintiffs aver that the ALRIP "was frozen in 2009" and that "management employees ceased accruing any further benefits as of the date on which the freeze became effective." (*Id.*).

The second and third defined benefit pension plans, the Lucent Technologies, Inc. Retirement Plan (the "LTRP"), and the Lucent Technologies Pension Plan (the "LTPP") "provide benefits to, respectively, present and former employees who were (or are) covered by collective bargaining agreements between [Alcatel] and various labor organizations (including CWA and IBEW) representing the employees and their dependents." (*Id.* ¶ 17).

On "September 14, 2015, Alcatel advised CWA and IBEW that, effective December 1, 2015, it would transfer approximately 19,100 participants in the LTPP to the ALRIP and approximately 900 LTPP participants to the LTRP." (*Id.* ¶ 28). According to Plaintiffs:

> Participants transferring to the ALRIP were to consist exclusively of former IBEW represented employees and/or their surviving spouses. The 900 transferees to the LTRP were to consist entirely of the surviving spouses of former CWA represented employees. In addition to the transfer of participants, [Alcatel] stated it [would] simultaneously transfer assets sufficient to pay the retirement benefits owed the affected persons. And, [Alcatel] state[d], it also would transfer to the recipient plans a ... portion of the LTPP's excess funding (*i.e.*, assets actuarially determined to be greater than necessary to pay the benefit obligations owed to all plan participants).

2

(*Id.*). Plaintiffs allege that Alcatel transferred to the ALRIP $1.2 billion in excess funding and to the LTRP $26 million in excess funding (the "Excess Funding Transfers"). (*Id.*).

On December 4, 2015, before Defendants filed an answer or otherwise responded to Plaintiffs' complaint, (ECF No. 1), Plaintiffs filed a first amended complaint alleging that the Excess Funding Transfers violated the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"). (ECF No. 15). On January 4, 2016, Defendants filed a motion to dismiss the first amended complaint, (ECF No. 18), which was granted on November 30, 2016. (ECF No. 36).

In the Court's November 30, 2016 opinion, the Court found that Plaintiffs lacked standing to bring their ERISA claims against Defendants. (ECF No. 35 at 12-16). More specifically, the Court found that the Individual Plaintiffs lacked Article III standing to bring their ERISA claims against Defendants because "they ha[d] not suffered a concrete, particularized injury" as a result of the Excess Funding Transfers. (*Id.* at 12). That is, the Individual Plaintiffs did not allege "that any medical benefits to which they [we]re entitled ha[d] gone unpaid. Nor [did] they adequately allege[] the transfers increased the risk of default on those medical benefits, because they [did] not allege[] the LTPP ha[d] become underfunded as a result."[2] (*Id.* at 13).

Further, the Court held that the Union Plaintiffs lacked statutory standing because they were not included in the "list of individuals and entities with statutory standing to bring civil suit actions" under ERISA, (*id.* at 15), and that even if the Union Plaintiffs had statutory standing, their claims would nonetheless fail because the Individual Plaintiffs lacked Article III standing. (*Id.* at

---

[2] The Court notes that as of the date of oral argument on Defendants' second motion to dismiss, the LTPP, ALRIP, and LTRP all remained in funded or overfunded status. (Tr. 51:18-19 ("They're all in funded or overfunded status, that's correct.")).

3

15-16). The Court also dismissed Plaintiffs' LMRA claims for failure to state a claim upon which relief may be granted. (*Id.* at 12).

The Court also noted that to the extent Plaintiffs raised for the first time in their briefing, but not in their pleading, that a provision of the LTPP granted the Individual Plaintiffs a reversionary interest in the Excess Funding Transfers, the Court "need not presume this allegation [a]s true, because it was not pleaded in the [First] Amended Complaint." (*Id.* at 14 n.11). The Court granted Plaintiffs thirty days to file a second amended complaint. (*Id.* at 16).

On December 22, 2016, Plaintiffs filed a second amended complaint, which alleges the same causes of action as Plaintiffs' first amended complaint, but now contains allegations with respect to the Individual Plaintiffs' purported interest in the Excess Funding Transfers, which had initially been mentioned only in briefing. (ECF No. 37). On February 3, 2017, Defendants filed a motion to dismiss. (ECF No. 39). On March 15, 2017, Plaintiffs opposed, (ECF No. 44), and clarified that Plaintiffs are not realleging their LMRA claims in their second amended complaint, (*id.* at 2; *see also* Tr. 71:19-72:10), and that all that remains before the Court are Plaintiffs' ERISA claims.[3] (ECF No. 44 at 2). On April 10, 2017, Defendants replied. (ECF No. 47). The Court subsequently received a number of submissions from the parties, (ECF Nos. 52-54), and held oral argument. (Tr.).

### III. LEGAL STANDARD

#### A. Federal Rule of Civil Procedure 12(b)(1)

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering*

---

[3] Accordingly, the Court need not address Defendants' first argument in their motion to dismiss that the law of the case doctrine bars Plaintiffs' LMRA claims. (ECF No. 39-1 at 4-6).

4

*Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See id.* "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (alterations in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)), *abrogated on other grounds by Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## B. Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . 'will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

### A. Plaintiffs Lack Standing to Bring Their ERISA Claims Against Defendants

As discussed above, the Court previously dismissed the Individual Plaintiffs' ERISA claims, finding that the Individual Plaintiffs lacked constitutional standing because they did not adequately allege that they had a concrete, particularized injury resulting from the Excess Funding Transfers. (ECF No. 35 at 12-15). In an effort to cure such deficiency, Plaintiffs allege in their second amended complaint that Section 4.11 of the LTPP supports a finding that the Individual Plaintiffs suffered a concrete, particularized injury resulting from the Excess Funding Transfers because they contend that Section 4.11 creates a revisionary interest on behalf of the Individual Plaintiffs in any excess LTPP assets.

Section 4.11 of the LTPP "sets out the order in which plan assets must be used in the event of a plan termination[.]" (ECF No. 37 ¶ 39). More specifically, Section 4.11 provides that in the

6

event of a plan termination, six steps must be followed in distributing excess plan assets, and if any surplus thereafter remains, "such balance shall be applied solely for pension purposes in an equitable manner consistent with the purposes of the Plan." (*Id.*). According to Plaintiffs, because "[n]o assets may revert to the sponsoring employer," the Individual Plaintiffs therefore have "a property interest in the totality of LTPP assets, even assets greater than needed to pay accrued benefits promised to participants upon their retirement or termination of the plan." (*Id.*).

In response, Defendants contend that "[t]he plan language creates no such right of reversion, and, even if it did, Plaintiffs do not, and cannot, allege that [Alcatel] is considering termination of the LTPP during that period or that [Alcatel] is precluded from changing the plan's termination priorities prior to executing such a hypothetical future termination." (ECF No. 39-1 at 9).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'" *Lujan*, 504 U.S. at 564 n.2 (citations omitted). "Thus . . . 'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (citations omitted).

Here, the Individual Plaintiffs maintain that they "are entitled under the LTPP . . . document and ERISA to . . . additional pension and retiree health benefits as can be provided in the event, following plan termination, surplus assets remain." (ECF No. 37 ¶ 39). The Court does not find, however, that the Individual Plaintiffs have "alleged that [they] 'ha[ve] sustained or [are]

7

immediately in danger of sustaining some direct injury[.]'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). That is, as discussed below, Plaintiffs have failed to set forth how the Individual Plaintiffs' purported injuries are *certainly impending*, and accordingly, the Individual Plaintiffs lack standing to bring their ERISA claims against Defendants.

First, Plaintiffs concede that the Individual Plaintiffs are only entitled to the LTPP's surplus assets if Alcatel terminates the LTPP, (ECF No. 37 ¶ 39); however, Plaintiffs do not allege that any such termination has taken place, or that any such termination is imminent. Conversely, Defendants maintain that "there's no sense that the plan is going to be terminated now or is in jeopardy of being terminated or underfunded." (Tr. 11:25-12:2; *see also id.* 19:21-22 ("We don't know when this plan is going to be terminated."); *id.* 20:13-17 ("Because this is all contingent on a termination provision that is not now in play, that no one has suggested is in play, and that the record before the Court shows nothing as to when it would become potentially in play.")).

Second, Plaintiffs do not maintain that Alcatel is foreclosed from amending the order of priority in which plan assets must be used in the event of a plan termination. Although the Court recognizes that such amendment would not be effective for five years, *see* 29 U.S.C. § 1344(d)(2)(A), again, Plaintiffs do not allege that termination of the LTPP will take place in the foreseeable future. *See supra*. Third, Plaintiffs do not purport that the Individual Plaintiffs will be alive at the time that the LTPP is terminated, and fourth, Plaintiffs do not aver that a surplus of assets will exist at the time the LTPP is terminated.

Finally, Plaintiffs do not allege that in the event of a plan termination, the Employee Benefits Committee, "the body solely charged by the LTPP with construing and interpreting its terms," (ECF No. 39-1 at 12), will construe Section 4.11's provision that excess assets be distributed "in an equitable manner consistent with the purposes of the Plan" as requiring

8

distribution of such assets to plan participants. Rather, Defendants have, both in briefing and at oral argument, explicitly identified alternative plan purposes. (Tr. 9:16-19 ("But what's important to understand is that in [Section] 4.8, one of the pension purposes that it can be used for is exactly what it was used for here, which is, namely, transfer to another fund."); ECF No. 47 at 6-7 (same); *see also* Tr. 27:23-28:2 ("[S]urvivor annuities . . . would be a pension purpose . . . death benefits . . . post-retirement health benefits . . . . [t]hose would all clearly be for pension purposes and benefits.") *id.* 13:17-14:14 (listing additional permissible pension purposes)).

Nonetheless, Plaintiffs summarily conclude that they have Article III standing because they contend that in the event that Alcatel terminates the LTPP, excess plan assets may not revert to Alcatel, but rather must be distributed among LTPP participants. (ECF No. 44 at 10-13; *see also id.* at 11 ("By precluding any employer interest in excess plan assets, the LTPP effectively grants each participant an undivided equitable interest in those excess assets. Accordingly, any reduction in the amount of excess resulting from Alcatel's violation of ERISA structural or fiduciary rules constitutes an injury to the interests of each LTPP participant sufficient to constitute Article III standing.")). Plaintiffs, however, do not cite to any facts in their second amended complaint or in the LTPP that confer a reversionary interest in the LTPP's excess assets on the Individual Plaintiffs.[4] In fact, Plaintiffs are unable to point to any case in which a provision like Section 4.11 of the LTPP granted plan participants a revisionary interest in surplus plan assets. (Tr. 33:21-25

---

[4] The Court notes that Plaintiffs contend that "[i]f a plan's grant to the sponsoring employer of a right of reversion of excess assets upon plan termination is what extinguishes the interest of plan participants in those assets, it follows that a plan's preclusion of any right of the employer to recover excess assets effectively grants to participants a legally cognizable interest in said assets." (ECF No. 44 at 11 n.11). As Defendants indicate, however, there are more than two ways surplus assets may be distributed upon plan termination. (ECF No. 47 at 5). That is, in addition to reverting back to the employer or being distributed among plan participants, pension benefit plans may provide for "other arrangements for any surplus remaining at termination." (*Id.*).

9

("THE COURT: Tell me specifically which case you think is your strongest position on that; something that is not definite, that is a potential out there. MR. HART: There are no cases that say that specifically.")). Conversely, Defendants maintain that Section 4.11 is implemented by 29 U.S.C. § 4044, which is "an ordering provision rather than one that creates substantive rights." (ECF No. 47 at 3 (quoting *Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1528 (3d Cir. 1988))). Based on the foregoing, the Court finds that the Individual Plaintiffs lack standing to bring their ERISA claims against Defendants.

To the extent that Plaintiffs maintain that alleging an ERISA violation in and of itself confers standing on the Individual Plaintiffs, (ECF No. 44 at 13-19), Plaintiffs' argument is without merit. In the Court's November 30, 2016 opinion, the Court held that:

> Plaintiffs are incorrect that [a] violation of ERISA automatically constitutes an injury-in-fact for the purposes of Article III standing. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

(ECF No. 35 at 13 n.10). Preliminarily, the Court notes that Plaintiffs' arguments with respect to the Court's interpretation of *Spokeo* would have been more appropriately addressed in a motion for reconsideration. Nonetheless, even considering Plaintiffs' arguments regarding *Spokeo*, *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017), *Fletcher v. Convergex Group, L.L.C.*, 679 F. App'x 19 (2d Cir. 2017), and the remaining cases cited by Plaintiffs, Plaintiffs' argument that allegations of substantive ERISA violations are sufficient to confer standing on the Individual Plaintiffs "runs aground on the shoals of our precedent." *Krauter v. Siemens Corp.*, 725 F. App'x 102, 107 (3d Cir. 2018). The Third Circuit, directly acknowledging *Spokeo* and *Horizon*, recently held that:

10

"[T]he *Spokeo* Court meant to reiterate traditional notions of standing," and our pre-*Spokeo* cases are still good law. [Plaintiff] relies on *In re Nickelodeon Consumer Privacy Litigation* and *In re Horizon Healthcare Services Data Breach Litigation*, but those cases pertained to the particular injuries the plaintiffs alleged: data privacy violations. *Nickelodeon* and *Horizon* did not overrule *Perelman*'s ERISA-specific holding. Indeed, in *Horizon*, we pointed to ERISA violations of the kind alleged here as an example of what is not an injury in fact. We contrasted data privacy violations, which are injuries in fact even absent further harm, with ERISA plan management violations, which (under a Fifth Circuit case we cited approvingly) are not.

*Krauter*, 725 F. App'x at 108 (quoting *Horizon*, 846 F.3d at 638).[5] Accordingly, Defendants' motion to dismiss the Individual Plaintiffs' ERISA claims for lack of standing is granted.[6]

---

[5] The Court is in receipt of Plaintiffs' letter seeking to distinguish *Krauter*. (ECF No. 53). Plaintiffs' arguments, however, essentially boil down to the same assertion that "LTPP participants have a cognizable interest in protecting plan reserves." (*Id.* at 3). The Court rejects Plaintiffs' contention for the reasons stated above, and the Court accordingly declines to find that *Krauter* is distinguishable with respect to the instant case.

[6] Plaintiffs also argue that alleging an ERISA violation in and of itself confers standing on the Individual Plaintiffs because Plaintiffs seek injunctive relief. Plaintiffs' second amended complaint seeks relief in the form of "an order directing Alcatel to restore to the LTPP the liabilities and assets unlawfully transferred . . . or, in the alternative, that Alcatel make the LTPP whole by contributing to that Plan an amount equal to the excess transferred out of it[.]" (ECF No. 37 at 23). Although Plaintiffs describe their requested relief as "disgorgement," which according to Plaintiffs is "classic equitable relief," (Tr. 38:20-21), "requests for restitution and disgorgement, both of which are individual in nature . . . require [the Individual Plaintiffs] to demonstrate individual loss." *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003); *see also Perelman v. Perelman*, 793 F.3d 368, 375-76 (3d Cir. 2015) (same). Accordingly, Plaintiffs' argument is without merit.

Further, the Court also finds that the Union Plaintiffs lack standing to bring their ERISA claims against Defendants. Although unclear from Plaintiffs' submissions whether Plaintiffs seek to reargue their contention that the Union Plaintiffs have standing, the Court's November 30, 2016 opinion with respect to this issue applies equally here. That is, the Individual Plaintiffs do not have Article III standing, and the second amended complaint identifies no other individual with Article III standing whom the Union Plaintiffs purport to represent. "Therefore, the Union Plaintiffs lack associational standing under ERISA, and dismissal of their ERISA claim[s] against Defendants is warranted." (ECF No. 35 at 16).

11

**B. Even If Plaintiffs Had Standing to Bring Their ERISA Claims Against Defendants, Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted**

Even if Plaintiffs were to have standing to bring their ERISA claims against Defendants, the Court finds that Plaintiffs have failed to state a claim upon which relief may be granted. Plaintiffs contend that:

> The transfer of excess LTPP assets to the ALRIP and LTRP constitutes a violation of the exclusive benefit rule in ERISA Section 403(c)(l) and the fiduciary duties in ERISA Section 404(a) because it does not satisfy any of the limited exceptions to ERISA Sections 403(c)(l) or 4044(d) . . . and results in LTPP assets being used to benefit both [Alcatel] and persons who are not and never were participants in the LTPP.

(ECF No. 37 ¶ 42). In response, Defendants seek dismissal for failure to state a claim on the basis that neither Section 403(c)(1) nor Section 404(a) are implicated by Defendants' actions because Defendants' actions were "settlor functions of the plan sponsor." (ECF No. 39-1 at 16). More specifically, Defendants aver that:

> [Alcatel] acted to transfer retirees and assets from the LTPP to the two other plans through plan amendments that accomplish a spinoff from the LTPP and mergers into the ALRIP and LTRP . . . . The spinoff decision does not fall within the purview of ERISA's regulation of fiduciary functions. It is plan redesign. The allocation of assets between plans falls outside of any fiduciary duty requirements[.]

(*Id.*).

"In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) ("[T]he act of amending a pension plan does not trigger ERISA's fiduciary provisions."); *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 127 (3d Cir. 2006) ("The amendment of an ERISA plan is not a fiduciary act governed by ERISA."); *Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376,

1379 (D.C. Cir. 1998) ("[W]hen employers 'adopt, modify, or terminate welfare plans,' they are not acting in a fiduciary capacity.") (citations omitted).

Here, Defendants amended the LTPP by transferring retirees and assets from the LTPP to two other plans through plan amendments. (ECF No. 37 ¶¶ 28, 30, 36). Accordingly, the Court agrees with Defendants that neither Section 403(c)(1) nor Section 404(a) are implicated by Defendants' actions because such actions were not fiduciary in nature. *See Sys. Council EM-3*, 159 F.3d at 1379 ("The issue in this case is whether AT&T acted in a fiduciary capacity when it amended its pension and welfare plans and allocated the assets and liabilities of those plans between AT&T and Lucent. The District Court found, and we agree, that appellants have failed to state a legally cognizable claim under ERISA's fiduciary provisions, because there has been no showing that AT&T acted in a fiduciary capacity in taking the actions at issue in this case.").

Even if Defendants' actions were considered fiduciary in nature, the Court nonetheless finds that Plaintiffs fail to state a claim upon which relief may be granted. Plaintiffs contend that Defendants violated Sections 403(c)(1) and 404(a) because the Excess Funding Transfers resulted "in LTPP assets being used to benefit both [Alcatel] and persons who are not and never were participants in the LTPP." (ECF No. 37 ¶ 42). The Excess Funding Transfers, however, did not inure to the benefit of Alcatel. That is, the LTPP's surplus assets were transferred from the LTPP to the ALRIP and the LTRP, not to Alcatel. (*Id.* ¶¶ 28, 30). Further, 20,000 participants transferred into the ALRIP and the LTRP were originally part of the LTPP. (*Id.*).

The fact that Alcatel may have saved money as a result of such transfers does not give rise to an ERISA violation. *See Hughes Aircraft Co.*, 525 U.S. at 445 ("[T]he incidental benefits conferred upon Hughes when it amended the Plan are not impermissible under the statute. It is irrelevant whether Hughes received lower labor costs or other such incidental benefits from

13

implementing the noncontributory structure[.]"); *see also id.* at 445-46 ("Receipt of these types of benefits no more constitutes a breach of fiduciary duties than they would constitute improper inurement or otherwise violate ERISA. To find that such benefits somehow violated the statute would forestall employers' efforts to implement a pension plan. ERISA, by and large, is concerned with 'ensur[ing] that employees will not be left emptyhanded once employers have guaranteed them certain benefits,' not with depriving employers of benefits incidental thereto.") (alteration in original) (citations omitted); *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 6 (1st Cir. 2018) ("[The law] would [not] deem a fiduciary liable for disloyalty merely because it took action aimed at furthering an objective it shared with the beneficiaries.").

Moreover, the fact that surplus assets were used to fund plans that encompassed participants who were never part of the LTPP, (*see* Tr. 45:13-15), also does not give rise to an ERISA violation. In *Trenton v. Scott Paper Company*, the Third Circuit rejected appellants' contention that appellee violated ERISA by using one pension benefit plan's surplus to fund another. *See* 832 F.2d 806, 809 (3d Cir. 1987). In so holding, the Third Circuit opined that "[t]his contention ignores the fact that [appellee] funded and will continue to fund [the first pension benefit plan] . . . . Use of [one pension benefit plan's] surplus to pay [another pension benefit plan's] benefits in no way decreases either appellants' rights under [their pension benefit plan] or [appellee's] obligation to fully fund [the first pension benefit plan]." *Id.*; *see also Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (holding that appellees did not violate ERISA by transferring some of one pension plan's surplus to another plan); *Donovan v. Walton*, 609 F. Supp. 1221, 1245 (S.D. Fla. 1985) ("ERISA . . . simply does not prohibit a party other than a plan's participants and beneficiaries from benefiting in some measure from a prudent transaction with the plan."), *aff'd sub nom. Brock v. Walton*, 794 F.2d 586 (11th Cir. 1986).

Here, Plaintiffs concede that the LTPP allowed for the Excess Funding Transfers. (Tr. 60:6-8 ("THE COURT: Do you agree that the plan allowed for the transfers at issue? MR. HART: It does[.]")).[7] Further, the LTPP participants' defined benefits remained unaffected by the Excess Funding Transfers. (*See* ECF No. 47 at 12 ("[T]he surplus assets generated no productive value (because all of the promised benefits [were] fully funded)[.]"))). In fact, the LTPP remains in overfunded status. (Tr. 51:25-52:26 ("Certainly [the LTPP], this particular plan is . . . over 120 [percent funded].")). As of the date of oral argument, the ALRIP and LTRP were also in funded or overfunded status. (*Id.* 51:18-19 ("They're all in funded or overfunded status, that's correct.")). Additionally, the Excess Funding Transfers reallocated "the assets and liabilities associated with those people transferred." (*Id.* 51:13-14). Thus, although the LTPP's surplus assets were reduced, so too were its liabilities. (*Id.*). Finally, Plaintiffs allege "[n]o self-dealing, imprudent investment or misappropriation of plan assets by [Alcatel.]" (ECF No. 47 at 12). Accordingly, the Court finds that Plaintiffs have failed to state a claim upon which relief may be granted, and grants Defendants' motion to dismiss.[8]

V. **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is granted. An appropriate Order accompanies this Opinion.

DATED: October 10, 2018

CLAIRE C. CECCHI, U.S.D.J.

---

[7] The Court acknowledges Plaintiffs' argument that the Excess Funding Transfers must still comply with ERISA, (Tr. 60:8-9), however, as discussed herein, the Court finds that Plaintiffs have failed to state a claim upon which relief may be granted with respect to such claims.

[8] As such, the Court need not determine whether Defendants' actions were immunized by their compliance with the Internal Revenue Code or ERISA Section 208. (ECF No. 39-1 at 19-20). Moreover, the Court need not consider whether the Individual Defendants should be dismissed for the additional reason that they are not potentially liable fiduciaries, as all of Plaintiffs' claims against all Defendants have been dismissed. (*Id.* at 20-21).

15